UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  08-22664-CIV-MARTINEZ-BROWN

REASSURE AMERICA LIFE INSURANCE
COMPANY F/K/A VALLEY FORGE LIFE
INSURANCE COMPANY,

    Plaintiff,

vs.

BRUCE WARNER, et al.,

    Defendants,

vs.

FEDERAL TRADE COMMISSION,

    Intervenor.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the motion for summary judgment filed by Defendant Bruce Warner in his capacity as the personal representative of the estate of David R. Shomers ("Shomers Estate") **(D.E. No. 103)** and the motion for summary judgment filed by Intervenor Federal Trade Commission ("FTC") **(D.E. No. 104)**.

**I.  Preliminary Matters**

**A.**    **Admissibility of Verified Answer as Evidence**

The first issue before this Court regards the admissibility of David Shomers's "Verified Answer and Affirmative Defenses to Interpleader Complaint and Crossclaim by Shomers and DSG Holding Co. Inc."  As discussed below, David Shomers died on December 8, 2009 without

being deposed in this case. As the personal representative of the Shomers Estate, Bruce Warner (the "Shomers Estate") seeks to introduce the "Verified Answer and . . . Crossclaim . . ." as evidence for the Court to consider in ruling on the motions for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Rule 56 also provides that when a motion for summary judgment is filed, "an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c)(2). The rule further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Eleventh Circuit also explicitly requires that a court ruling on a motion for summary judgment consider only evidence that will be available in an admissible form at trial. *Macuba v. Deboer*, 193 F.3d 1316, 1322-25 (11th Cir. 1999); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996).

The Shomers Estate asserts that the verified answer is admissible at trial pursuant to Federal Rule of Evidence 807. Rule 807, the Residual Hearsay Exception, provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807.  The Verified Answer as a whole includes a number of matters that are not evidence of material facts, are conclusory legal statements, and can be introduced by other means.  These portions of the Verified Answer are clearly not admissible pursuant to the Rule 807.  The primary portion[1] of the Verified Answer which provides evidence of a material fact which the proponent cannot procure through any other reasonable efforts is the following assertion:

> Andreoni [the decedent whose life was insured in the policy at issue in this case] duped Shomers into signing the form of the request for change of beneficiary of the Policy (which Andreoni later altered and forwarded to [Valley Forge Life Insurance Company]) by presenting Shomers an incomplete form, falsely representing that it was required in connection with a pending policy renewal, intimidating him in executing same, and then, when Shomers said he would hold on to the executed form until he obtained clarification from the court appointed Monitor, Andr[e]oni grabbed the form and fled.

Verified Answer ¶ 43.  Because of his death, Shomers will not be able to testify to these facts at trial.[2]

---

[1] In his Verified Answer, David Shomers also asserts that his signature on a later form transferring ownership to the Anthony R. Andreoni Irrevocable Trust is a forgery, *see* Verified Answer ¶¶ 44-45, but other evidence in the record supports that contention at least circumstantially.

[2] It is undisputed that the statement is not admissible under any of the hearsay exceptions provided for unavailable witnesses under Federal Rule of Evidence 804.

Rule 807 "is to be utilized only rarely, and is not to be taken as a 'broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 803 and 804(b).'" *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317, 2005 WL 5955699, at *5 (S.D. Fla. Feb. 2, 2005) (quoting *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977)[3]). In order to be admitted under Rule 807, there must be a "clear basis of trustworthiness" to support the out-of-court statement. *NLRB v. United Sanitation Serv.*, 737 F.2d 936, 941 (11th Cir. 1984). "[T]he burden is on the party seeking to invoke the residual exception to clearly demonstrate the existence of the requisite guarantees of trustworthiness." *Id*. (citing *United States v. Colson*, 662 F.2d 1389, 1392 (11th Cir.1981)).

In this case, the Court is guided by *NLRB v. United Sanitation Service*, 737 F.2d 936, 941 (11th Cir. 1984). In that case, the Eleventh Circuit considered a sworn statement by a deceased witness that had been admitted pursuant to the residual exception to the hearsay rule. The witness's statement was corroborated in certain details, that corroboration "d[id] not go to the veracity of several key assertions." *Id*. Moreover, the statements were in the declarant's interest, because they "weighed heavily in direct support of the charge that he had been illegally discharged, a charge that, if successful, potentially would have resulted in reinstatement and an award of back pay." *Id*. at 940. The Eleventh Circuit ruled that the sworn statement could not be admitted into evidence. *Id*. at 940-41.

In this case, Shomers's Verified Answer, particularly paragraph 43, weigh heavily in direct support of the charge that Shomers is entitled to the proceeds of the $2,000,000 life

---

[3] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

insurance policy on Andreoni. The corroborating evidence pointed to by the Shomers Estate does not go to the key assertions in the Verified Answer, specifically regarding the fraud or coercion allegedly used to trick or to force Shomers into signing the change of beneficiary form. Indeed, Shomers seems to assert both that he was tricked into voluntarily signing the form by fraud and that he was coerced into involuntarily signing the form by some unspecified intimidation. Paragraph 43 is internally inconsistent, further undermining its trustworthiness. Accordingly, the Court finds that the Verified Answer is not admissible at trial under Federal Rule of Evidence 807, and the Court will not consider it in ruling on the motions for summary judgment.

**B.     FTC's Standing**

In *Federal Trade Commission v. American Entertainment Distributors, Inc. et al.*, 04-22431-CIV-MARTINEZ, this Court has granted the Stipulated Final Order and Permanent Injunction as to Defendant Miriam Andreoni. Pursuant to that Order, Miriam Andreoni has assigned her rights as a beneficiary to the life insurance policy at issue in this case to the FTC. The Court has also granted the FTC's motion to be substituted in this action. Therefore, the FTC has the same standing to challenge the position of the Shomers Estate as Miriam Andreoni. *See* Fed. R. Civ. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.").

## II. Factual and Procedural Background[4]

DSG Holding Company, Inc. ("DSG") is a Florida corporation which was owned by two shareholders, David Shomers ("Shomers") and Anthony R. Andreoni ("Andreoni"). On October 26, 1990, DSG and its shareholders entered into a Shareholders' Agreement. Pursuant to the agreement, certain redemption (buy/sell) options were provided in favor of DSG and the surviving shareholder in the event of the death of any of the shareholders.

On or about October 1, 1997, an application for an insurance policy (the "policy") on the life of Anthony R. Andreoni was submitted to Valley Force Life Insurance Company ("Valley Force Life") in amount of $2,000,000. The owner and primary beneficiary of the policy, as stated on the application, was "David Shomers, Business Associate/Business Partner."[5] Based on the application, policy number TRTU000941 insuring Anthony R. Andreoni was issued in the amount of $2,000,000.

The policy provides that the owner of the policy may change the beneficiary of the policy or assign ownership of the policy by written request to the insurance company. The policy defines "written request" as "a request in writing in a form satisfactory to [the insurer] and recorded at [the insurer's] Administrative Office."

In April 2003, Andreoni, Shomers, and DSG executed a new shareholder's agreement. (D.E. No. 103-11.) This agreement also provided that any deceased shareholder's estate would be obligated to sell his stock to the surviving shareholders or to the corporation, and it provided

---

[4] Except where otherwise cited, these facts are derived from the statements in the parties' statements of material facts that the other parties have not disputed.

[5] There is some evidence in the record that David Shomers was Anthony R. Andreoni's brother in addition to being his business partner. This is not material to these motions, however.

that the sale would take place after the corporation received the proceeds of "any life insurance policy" on the deceased shareholder. *Id*. In the agreement, the corporation agreed to maintain life insurance coverage on the lives of the shareholders in amounts at least equal to the value of the shareholder's stock. *Id*. The agreement provided that the proceeds of the policies should be used to purchase the shares of the deceased shareholder. *Id*. The shareholders also agreed to cause the policies to be endorsed so that the other shareholders and the corporation must be notified in writing prior to any termination, non-renewal, or cancellation of such policies. *Id*. Finally, the agreement provided that if the shareholders purchased the insurance policies personally, the corporation would reimburse them for the premiums. *Id*.

On January 4, 2005, pursuant to litigation in the case *Federal Trade Commission v. American Entertainment Distributors, Inc. et al*., 04-22431-CIV-MARTINEZ ("FTC v. AED"), this Court entered a Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver and Other Equitable Relief and a Stipulated Amendment of Preliminary Injunction as to Defendant Anthony Rocco Andreoni and Appointment of Monitor for DSG Holding Company, Inc. (FTC v. AED D.E. Nos. 100, 101) (the "Freeze Orders"). The Freeze Orders provide, among other things, for an asset freeze to protect and preserve the interest Andreoni had in DSG and for the appointment of Gerald B. Wald ("Monitor") as monitor for DSG. The purpose of the Freeze Orders and the appointment of the Monitor was to maintain the status quo and prohibit the transfer of assets belonging to any entity owned directly or indirectly by Andreoni, among others. The Freeze Orders operated to impose a freeze on the assets of DSG.

On or about October 17, 2007, Arleene Santiago[6] forwarded to Valley Forge Life Insurance Company a signed Request for Change of Beneficiary Form for Policy TRTU000941 insuring Anthony R. Andreoni.  The Request for Change of Beneficiary Form states that, as owner of the Policy, Shomers revokes all previous beneficiary designations and changes the beneficiary designation for payment of net proceeds of the policy to name Miriam Andreoni ("Miriam") as the primary and sole beneficiary of the policy.  The signature that appears on the signature page of a Request for Change of Beneficiary Form for the policy, stamped AED-REA-000245, is the signature of David Shomers.  Valley Forge records indicate that the form was requested by Shomers, mailed to Shomers's home address in May 2007, executed in May 2007, but not delivered to the insurer until October 2007.  Temel Aff. ¶¶ 13-14.  There is some evidence, however, that Andreoni began paying the premiums on the policy starting in August 2007 and continuing until the Trust began paying them in 2008.  (D.E. No. 115, Exh. E, Exh. J); P. Smolynaski Dep. 60-61.

On or about December 20, 2007, Arleene Santiago and George Temel faxed Valley Forge Life Insurance a Request for Change of Ownership form that purports to request that the owner of the policy be changed to the Anthony R. Andreoni Irrevocable Trust (the "Trust"), of which Defendants Peter Smolyanski and Nadia Smolyanski[7] are co-trustees.  (D.E. No. 103-15, Exh. 13.)  On the Request for Change of Ownership forms are what purports to be the signatures of

---

[6] Arleene Santiago is the assistant of George Temel, the insurance agent through whom the policy was acquired.  Temel Aff. ¶¶ 2, 4, 14.

[7] Miriam Andreoni is the daughter of co-trustees of the Trust, Peter and Nadia Smolyanski, and she would become trustee of the Trust if both co-Trustees became unable to serve or resigned for any reason.

Peter and Nadia Smolyanski as trustees and the signatures of David Shomers and Ronda O'Brien, a notary, along with O'Brien's notary stamp. *Id*. at 3. The Request for Change of Ownership form was accompanied by a Request for Change of Beneficiary Form, in which the Trust, as the purported new owner of the policy, changed the beneficiary to name the Trust as the primary and sole beneficiary of the policy. *Id*. at 5-6. Andreoni was the person who delivered both forms to Temel's office. Temel Aff. ¶ 15.

When deposed, Ronda O'Brien testified that the notary signature on the Request for Change of Ownership form does not look like her signature, because the signature is cursive and she does not write in cursive, and the signature is not slanted the way her left-handed signature slants, and it has letters attached that she does not attach. O'Brien Dep. 11, 21. She did identify the stamp on the document as her notary seal, which she testified that she kept in an unlocked drawer in her unlocked office. O'Brien Dep. 12, 22-23. She testified that she did not recall ever knowing David Shomers or notarizing anything for him. O'Brien Dep. 13. She testified that she could not have notarized anything for Shomers, because Shomers was not a roofer. O'Brien Dep. 21. She testified that she would remember if anyone had asked her to notarize a document other than a commencement or a roofing permit. O'Brien Dep. 21. O'Brien knew Anthony Andreoni because he worked as a salesman for the same roofing company that employed her. O'Brien Dep. 13. O'Brien testified that at that employer, she notarized roofing permits and notices of commencements, and she was sure that she notarized those things for Andreoni at some point. O'Brien Dep. 14-15.

On March 20, 2008 Anthony R. Andreoni passed away. The insurance agent, George Temel, testified that when he contacted Shomers to offer his condolences following Andreoni's

death, he mentioned meeting with the Trust's trustees to sign claim forms, and Shomers did not ask for claim forms or say that he would make a claim on the policy proceeds himself. Temel Aff. ¶ 18.

On or about June 2, 2008, Defendants Peter Smolyanski and Nadia Smolyanski as co-trustees of the Anthony Andreoni Irrevocable Trust (the "Trust") presented a claim to Reassure American Life Insurance Company asserting that the Trust is the sole and primary beneficiary of the policy. The claim presented by the Trust is based on (1) a "Request for Change of Ownership Form" that purports to request that the owner of the policy be changed to the Trust, and (2) a "Request for Change of Beneficiary Form" in which Peter and Nadia Smolyanski purport to request that the Trust be designated the primary and sole beneficiary of the policy.

To avoid exposure from parties with competing claims, Plaintiff Reassure Life Insurance f/k/a Valley Forge Life Insurance Company ("Reassure") filed this interpleader action against David R. Shomers ("Shomers"), Miriam Sofia Andreoni ("Miriam") individually, and Peter and Nadia Smolyanski as co-trustees of the Trust, claiming that it had been placed on notice of multiple competing claims on the policy on Andreoni's life.

On December 8, 2009, Shomers passed away. On January 26, 2010, Bruce Warner was appointed personal representative for Shomer's estate by the probate court. This Court's March 24, 2010 Order authorized Warner (the "Shomers Estate") to be substituted for Shomers as the real and proper party in this litigation.

In response to Reassure's interpleader action, Shomers and DSG filed a cross-claim against Miriam and the Trust, seeking the entry of a declaratory judgment against them invalidating any purported change of ownership or beneficiary of the policy as having been made

in violation of the Freeze Orders and directing the insurance proceeds to be paid either to DSG or Shomers as trustee for DSG with the direction that such proceeds be promptly applied to effectuate the buyout of the stock interest held by Andreoni in any capacity at the time of his death.

Miriam Andreoni owes a debt to Intervenor FTC that the FTC has been seeking to collect since at least September 2004, when the FTC filed suit against her and others in the case FTC v. AED.  In that suit, the FTC alleges claims against Miriam Andreoni arising from deceptive practices and violations of the Franchise Rule in marketing for AED and other corporations that were operated as a common enterprises with AED.  The FTC seeks a judgment of over $19 million against Defendant Miriam Andreoni for payment of restitution, refunds, and damages pursuant to 15 U.S.C. §§ 53(b) and 57b.

As a Defendant in this action, Miriam Andreoni has asserted that the Trust is the rightful beneficiary under the policy and is entitled to the policy proceeds payable upon the death of Anthony Rocco Andreoni.  In the July 29, 2009 proposed settlement in this case, Miriam Andreoni agreed to surrender her claim without receiving any policy proceeds, provided that the Trust received $1.3 million from the policy proceeds.

The Court granted the FTC's motion to intervene on March 23, 2010.  In granting the motion, the Court noted that it does not appear to be in Miriam Andreoni's interest for her to be found a beneficiary, which would result in the policy funds being turned over as assets in the FTC v. AED litigation.  It is in her interest if policy proceeds go to the Trust controlled by her parents.

On May 25, 2010, the Court permitted the Plaintiff to deposit the life insurance proceeds

with the Court and dismissed the Plaintiff with prejudice.

**III. Standard**

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an

affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**IV. Analysis**

**A.     The Freeze Orders' Relevance to the Policy**

The Shomers Estate asserts that pursuant to the Freeze Orders in the FTC v. AED

litigation, Shomers did not have the authority to change the beneficiary or the owner of the policy at issue. Shomers, however, was and is not a party to the FTC v. AED litigation. The Freeze Orders froze assets owned or controlled by the FTC v. AED Defendants; assets in the actual or constructive possession of of FTC v. AED Defendants; and assets owned, controlled by, or in the actual or constructive possession of an entity owned, managed, or controlled by an FTC v. AED Defendant. (FTC v. AED D.E. No. 101 at 5.) It is undisputed that Shomers, who was not an FTC v. AED Defendant and was not owned, managed or controlled by an FTC v. AED Defendant, owned the policy.[8] It is similarly undisputed that Shomers was the policy beneficiary at the time the Freeze Orders were entered. Therefore, Shomers's assets were not frozen by the Court's Freeze Orders. Shomers had the power, pursuant to the terms of the policy, to change the beneficiary or to transfer ownership. Even if Shomers violated the 2003 shareholder agreement by transferring the policy,[9] he did not transfer it in violation of this Court's Freeze Orders. Even if he

---

[8] The Shomers Estate argues that the 2003 shareholders agreement provided that "[t]o the extent that either shareholder was named as the owner of such policies, that shareholder was merely the owner of the policy in his capacity of trustee for DSG." This argument is without merit. First, Shomers became the owner of the policy more than five years before he entered into the 2003 shareholders agreement, and he did not transfer ownership or rights to policy proceeds to DSG after entering into the shareholders agreement. Indeed, nothing in the policy itself reflects that David Shomers owned it in a capacity as trustee; in contrast, the change of ownership form purporting to transfer ownership of the policy to the Trust clearly indicates that the Smolyanskis signed in their capacity as trustees. Second, the clear terms of the 2003 shareholders agreement do not state that shareholders only own life insurance policies as trustees for the corporation. The agreement does not provide that the corporation must own the policies; only that it must maintain them and, if necessary, reimburse shareholders for premium payments from time to time. In fact, the 2003 shareholders agreement seems to contemplate that the individual shareholders may own and control the policies—hence the requirement that shareholders cause the corporation and their fellow shareholders to be notified if they elect to terminate a policy. Therefore, it is clear that Shomers himself owned the policy.

[9] Given the arguments advanced by the parties, it is not necessary for the Court to determine whether the 2003 shareholders agreement was violated. The Court notes, however,

had violated the Court's injunction, there is no controlling authority applying a per se rule that a change of beneficiary in violation of an injunction is void. *See Valley Forge Life Ins. Co. v. Delaney*, 313 F.Supp.2d 1305, 1307-09 (M.D. Fla. 2002) (discussing persuasive precedent in the absence of controlling Florida law). Some courts apply equitable remedies such as the imposition of a constructive trust rather than voiding the change of beneficiary. *See id*. Given the facts of this case, it seems highly unlikely that the Shomers Estate would be entitled to an equitable remedy for a wrongful transfer of a policy interest by Shomers himself. It is not necessary for the Court to consider remedies, however, because the Freeze Orders were not violated.

**B.     The Rightful Beneficiary**

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n Inc*., 21 F.3d 380, 383 (11th Cir. 1994). The first stage of this interpleader action is complete, in that the proceeds of the policy are deposited in a Court fund and the Plaintiff has been dismissed from the case. At issue before the Court is the question of the policy proceeds' rightful owner.

"Contract principles apply to the interpretation of an insurance policy, which is a type of

---

that the 2003 shareholders agreement does not explicitly set forth who should own the life insurance policies or who should be named beneficiary. Instead, the agreement only provides that the corporation is to pay the premiums (and the evidence suggests that DSG did not pay the premiums, at least not consistently) and that the proceeds are to go toward funding the other shareholder's option to buy.

contract." *O'Brien v. McMahon*, 44 So.3d 1273, 1277 (Fla. 1st DCA Oct. 7, 2010).[10] It is undisputed in this case that David Shomers needed the intent to change the beneficiary or to transfer ownership in order for those documents to be valid. The Court notes, however, that "mere intent to change the beneficiary of the policy [is] legally insufficient absent an effective designation of beneficiary on the form required by the insurer." *Brown v. Di Petta*, 448 So.2d 561, 562 (Fla. 3d DCA 1984).

The parties in this case have all conceded that David Shomers's signature on the written change of beneficiary form naming Miriam Andreoni as the beneficiary is genuine. His signature on the document is sufficient to show an intent to change the beneficiary and a designation of the new beneficiary pursuant to a valid written request. No admissible evidence exists to show fraud or coercion.

On the other hand, David Shomers's signature has not been verified on the change of ownership form. In light of the evidence that the notary's signature on that form was forged,[11] the Court cannot simply presume that the signature belonged to David Shomers. The Trust asserts that the FTC and the Shomers Estate must affirmatively prove that the signature is a forgery;

---

[10] Neither the parties nor the life insurance policy itself specify the governing law to be applied to the policy. "The doctrine of lex loci contractus directs that, in the absence of a contractual provision specifying governing law, a contract [other than one for performance of services] is governed by law of the state in which the contract is made. . . ." *Shaps v. Provident Life & Acc. Ins. Co*., 317 F.3d 1326, 1329-30 (11th Cir. 2003) (citing *Firoetti v. Mass. Gen. Life Ins. Co*., 53 F.3d 1228, 1235 (11th Cir. 1995)). The Court will therefore apply Florida law.

[11] The Trust characterizes O'Brien's testimony as uncertain because she denies being a handwriting expert when asked about her signature and because she states she "believes" it is hers. Her testimony is not uncertain, however. She gives a number of concrete reasons why the signature does not look like hers, stated that she did not remember ever meeting or notarizing anything for David Shomers, and asserted that she would have remembered notarizing anything other than a roofing document.

however, in order for the transfer of ownership to be valid, there must be some admissible evidence that Shomers intentionally executed the document. Shomers did not provide the executed document to the insurance company; Andreoni did. The signature on the form does not, on its face, look identical to Shomers's other record signatures. The Smolyanskis did not testify that they saw Shomers sign the form, and their signatures are dated a day later than his.

The Trust points to evidence of a number of immaterial facts, such as the fact that Shomers did not tell the insurance agent that he owned the policy during the agent's condolence call and that Shomers attended a Christmas party at Andreoni's house after the purported transfer to the Trust, in an attempt to show his intent to transfer his interest. This evidence is not sufficient to create a genuine issue if material fact as to whether Shomers transferred his ownership of the policy, especially in light of the fact that the evidence shows that Shomers had named Miriam Andreoni as the beneficiary. Having named a beneficiary other than himself, Shomers had no reason to make a claim for the insurance proceeds during the agent's condolence call. Evidence that the Trust took over the premium payments also fails to establish that Shomers executed the document transferring ownership to the Trust. The evidence before the Court shows that Andreoni started making payments on the premiums after Shomers changed the beneficiary to Miriam Andreoni. There is no evidence that Shomers knew who was making the premium payments after he stopped doing so.

Accordingly, the only admissible evidence in this case shows, albeit circumstantially, that the transfer of policy ownership was not valid, and there is no material evidence to dispute that evidence. Pursuant to the terms of the policy, absent a transfer of ownership to the Trust, the Trust could not change the beneficiary. Therefore, the Trust is not the owner or beneficiary of the

policy. Accordingly, the undisputed admissible evidence before this Court shows that Miriam Andreoni is the rightful beneficiary of the policy. Thus, the Court finds that the FTC is entitled to summary judgment.[12] Therefore, after careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. The Shomers Estate's motion for summary judgment **(D.E. No. 103)** is **DENIED**.

2. The FTC's motion for summary judgment **(D.E. No. 104)** is **GRANTED**.

3. This case is CLOSED, and all pending motions are DENIED AS MOOT. Final Judgment will be entered by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of November, 2010.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

---

[12] Because the FTC has been substituted for Miriam Andreoni in this action and because the claims between the FTC and Miriam Andreoni in FTC v. AED have been resolved, it is not necessary for the Court to determine whether the proceeds of the policy must be held pursuant to the Federal Debt Collection Act pending the final resolution of the FTC v. AED litigation. Pursuant to the transfer of her interest by Miriam Andreoni and the substitution of the FTC, the FTC is entitled to the funds as the party in interest.